UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **JOHN CARTWRIGHT**<br>DOC #721093 | **CIVIL ACTION NO. 5:17-cv-1669** |
| | **SECTION P** |
| **VERSUS** | **JUDGE ELIZABETH E. FOOTE** |
| **WARDEN GOODWIN, ET AL** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed *in forma pauperis* by *pro se* plaintiff John Cartwright ("Cartwright"). Cartwright is an inmate in the custody of the Louisiana Department of Public Safety and Corrections, and he is currently incarcerated at David Wade Correctional Center ("DWCC") in Homer, Louisiana. Plaintiff filed the instant suit on December 27, 2017. On January 29, 2018, he was ordered to amend to provide detailed information regarding his claim [Rec. Doc. 9]; he did so on February 5, 2018 [Rec. Doc. 10] and February 7, 2018 [Rec. Doc. 11]. On February 12, 2018, he filed a Motion Requesting Legal Help. [Rec. Doc. 12] He names DWCC Warden Jerry Goodwin, David Wade Correctional Center, Madison Parish Sheriff Larry Cox, Madison Parish Investigator Sammy Byrd, attorney Kevin Johnson, and Judge John D. Crigler as defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted.

### *Statement of the Case*

The only relief sought by Cartwright in this matter is a transfer from DWCC to Ouachita Detention Center ("ODC") in Monroe, Louisiana. He contends that he has family and friends in

Monroe, and that he was told by officials at Elayn Hunt Correctional Center ("EHCC"), his former place of incarceration, that he would be moved to ODC. *Id.* He claims that he was sent to DWCC instead of ODC because of a lawsuit that he filed based on his arrest, trial, and conviction in Madison Parish. *Id.* In this regard, he states that DWCC Warden Goodwin was formerly a warden in Madison Parish when he (Cartwright) was in jail in Tallulah, Louisiana, and that Goodwin "has tried to make me take a crazy test . . . . to get me certified as crazy which is why I was sent to Wade instead of Monroe." *Id.* at 3, 4. Cartwright also states that Judge Crigler and Warden Goodwin want him "certified as crazy and doped up so I will not be able to speak out about what they illegally did to me." [Rec. Doc. 8, p. 2.]

Cartwright further states that he is a former police officer and that he also ran for sheriff. *Id.* As such, he contends that he fears for his safety at DWCC as the facility is attempting to put him in "a dorm where I will be verbally abused and beaten and possibly killed." *Id.* at 5. Cartwright alleges that upon his arrival at DWCC, he asked to be placed in protective custody but was told by the warden that nothing would happen to him. *Id.* at 6. However, he believes that the warden is incompetent as shortly after Cartwright was sent to DWCC, a woman was raped and murdered there. *Id*.

Cartwright also claims that as punishment for not wanting to go into the dorm in question, a dictionary which contained federal law enforcement addresses was taken from him. [Rec. Doc. 1, p. 5] As a result, he contends that he is unable to write to law enforcement contacts. *Id.* at 6. He further claims that he only has eyesight in one eye and that his glasses were purposely broken. *Id.* at 5. Additionally, he states that despite his physically disability, his walker was taken as form of punishment. *Id.* However, he does not name a defendant whom he alleges is responsible for these actions.

Plaintiff was ordered to amend his suit to provide additional information regarding his claims against each defendant. He did so on February 5, 2018, pursuant to which he contends that he spoke with the U.S. Justice Department about Judge Crigler "buying votes" and, as a result, when he Judge Crigler got "revenge" on him when he was forced to appear before him on three separate occasions. [Rec. Doc. 10, p. 1] He also contends that Investigator Sammy Byrd had him arrested after he sent "info to the State Police where Byrd stole diamond rings." *Id.* He alleges that Sheriff Cox started to sit across from him in church to intimidate him because he was going to run for Sheriff. *Id.* at p. 2. He claims that his court appointed lawyer, Kevin Johnson, did not effectively represent him.

On February 7, 2018, he filed a letter into the record reiterating his claims against the defendants. [Rec. Doc. 11] And finally, on February 21, 2018, he filed a letter to the Court, which was interpreted as a Motion to Appoint Counsel. [Rec. Doc. 12]

*Law and Analysis*

*A. Screening*

Plaintiff is a prisoner who has been permitted to proceed *in forma pauperis.* As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir.1998) (*per curiam*). Because he is proceeding *in forma pauperis,* his complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2) (B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based

3

on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

### B. Transfer

Cartwright's sole request for relief in this matter is to be transferred from DWCC to ODC. He claims that this is needed for his protection as he is a former police officer and that officials at DWCC are attempting to force him to live in a dorm where he fears he will be attacked.

The law is clear that a prisoner has no right stemming from the United States Constitution and laws to be housed in any particular facility or to be transferred from one prison facility to another, even if conditions and amenities in one prison may be preferable to that in another. *Olim v. Wakinekona*, 461 U.S. 238, 245–46 (1983); *Fuselier v. Mancuso*, 354 F. App'x 49, 2009 WL 3780729, at *1 (5th Cir. Nov. 12, 2009) (citing *Olim*, 461 U.S. at 245). As the United States Fifth Circuit Court of Appeals has squarely held, "[t]he Due Process Clause does not, by itself, endow a prisoner with a protected liberty interest in the location of his confinement." *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000). He has no substantive federal constitutional right to be transferred to or confined in a place of his choosing.

### C. Judicial Immunity

Cartwright's claims against Judge Crigler arise out of the performance of his judicial duties. Judges have absolute immunity for acts done within the scope of their jurisdiction. *Stump v. Sparkman*, 98 S. Ct. 1099 (1978). The Fifth Circuit has delineated three elements to identify acts as being judicial in nature, and thus not in the clear absence of all jurisdiction: "(1) normal judicial functions that (2) occurred in the judge's court or chambers and were (3) centered around a case

pending before the judge." *Eitel v. Holland*, 787 F.2d 995, 998 (5th Cir. 1986). These factors are construed liberally in favor of immunity. *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985). Despite being afforded the opportunity to amend his complaint to specifically state how the alleged action(s) of Judge Criglerl fall outside of the three *Eitel* elements delineated above, he failed to do so. Accordingly, claims against this defendant should be dismissed.

### D. Attorney Kevin Johnson

Cartwright's claims against his attorney, Kevin Johnson, must fail. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West,* 487 U.S. at 48. Attorneys, including public defenders, do not act under color of state law when they perform a lawyer's traditional function as defense counsel in a criminal proceeding. *Polk Cnty. v. Dodson,* 454 U.S. 312, 325 (1981). Cartwright's attorney did not act under color of state law when he represented him in his criminal case. The claims against Mr. Johnson should be dismissed.

### E. David Wade Correctional Center

David Wade Correctional Center is not a legal entity capable of being sued. Federal Rule of Civil Procedure 17(b) provides the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Thus, Louisiana law governs whether these facilities have the capacity to sue or be sued and under Louisiana law. To possess that capacity one must qualify as a "juridical person." Louisiana Civil Code Article 24 provides that a juridical person is

". . . an entity to which the law attributes personality, such as a corporation or partnership." In Louisiana, neither correctional centers nor sheriff's departments are legal entities capable of suing or being sued as the State of Louisiana has not granted them juridical status. *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988); *Liberty Mutual Ins. Co. v. Grant Parish Sheriff's Dep't*, 350 So.2d 236 (La. Ct. App. 1977). Thus, Cartwright's claims against this non-juridical entity fail to state a claim upon which relief can be granted and should be dismissed.

### F. Madison Parish Sheriff Larry Cox and Madison Parish Investigator Sammy Byrd

Plaintiff was given the opportunity to amend his complaint to provide a description of what Madison Parish Sheriff Larry Cox and Madison Parish Investigator Sammy Byrd did to violate his constitutional rights, yet he failed to do so. While he alludes to false arrests due, in some part, to actions taken by Cox and Byrd, he alleges no specific facts which support the conclusion that his constitutional rights were violated by these defendants. As such, Cox and Byrd should be dismissed.

### G. Warden Goodwin

Plaintiff names DWCC Warden Goodwin as a defendant. "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983).

Plaintiff claims against Warden Goodwin appear to center around his fear that the Warden will place him in the general population. Because he is a former police officer, he fears for his safety should that occur. He states that when he arrived at DWCC, he asked to be put in protective custody. He was asked to amend his complaint to inform the court of his current custody status/location at DWCC [Rec. Doc. 9, p. 5]. In his Amended Complaint, he states, "I was told I can stay in lockdown for the time being because I refused to go to the Dorm." [Rec. Doc. 10, p. 1] Accordingly, it seems clear that plaintiff is still in lock down, presumably for his protection and as such, has not alleged that Warden Goodwin has affirmatively participated in any acts that caused constitutional deprivations.

### G. Personal Property

Cartwright also claims that personal property has been confiscated and/or broken. In sum, these allegations constitute a complaint that he was deprived of his property in violation of his due process rights. However, Cartwright is put on notice that the Due Process Clause of the Fourteenth Amendment does not embrace tort law concepts. Rather, he may be afforded a remedy under state tort law for deprivation of property. *See Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984). The Fifth Circuit has recognized that Louisiana law provides an adequate remedy for both intentional and negligent deprivations of property. *Copsey v. Swearingen*, 36 F.3d 1336, 1342-43 (5th Cir. 1994); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). Thus, the deprivation of property alleged by Cartwright in this case is precluded by the *Parratt/Hudson* doctrine.

### Conclusion and Recommendation

Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH**

**PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2).

**IT IS FURTHER RECOMMENDED** that his Motion to Transfer [Rec. Doc. 8] and Motion Requesting Legal Help [Rec. Doc. 12] be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, March 28, 2018.

_____
**KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE**